IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NATIONAL ELECTRICAL BENEFIT FUND** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **CODE ENGINEERING SERVICES, INC.** ) <br> ) <br> **Defendant.** ) <br> ) | Civil Action No. PWG-13-1025 |

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiff National Electrical Benefit Fund (the "NEBF")'s Motion for Default Judgment. ECF No. 6.[1] Defendant Code Engineering Services, Inc. (the "CESI") has not filed a response and the deadline for the response elapsed on June 10, 2013. *See* Loc. R. 105.2.a. Having reviewed the filings, no hearing is deemed necessary. *See* Loc. R. 105.6. For the reasons stated herein, the undersigned recommends that, following the time to object to this Report and Recommendation, Plaintiff's Motion for Default Judgment be GRANTED.

**I. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, the NEBF is "a multiemployer employee pension benefit plan within the meaning of Section 3(2) of [the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA")], 29 U.S.C. § 1002(2), that has been established pursuant to an agreement entered into between the International Brotherhood of Electrical Workers ("IBEW") and the National Electrical Contractors Association ("NECA")." ECF No. 1 ¶ 4. Plaintiffs Salvatore J.

---

[1] On July 22, 2013, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Grimm referred this case to the undersigned to review Plaintiff's Motion for Default Judgment and/or to make recommendation concerning damages. ECF No. 8.

Chilia and D.R. Borden, Jr. are the Trustees to the NEBF pursuant to Section 403 of ERISA, 29 U.S.C. § 1103 and, thereby are fiduciaries to the NEBF pursuant to Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). ECF No. 1 ¶ 5. Defendant, the CESI, is "an employer engaged in an industry affecting commerce, is contractually and legally obligated to submit contributions to the NEBF, and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C.§ 1002(5)." ECF No. 1 ¶ 6.

On April 5, 2013 Plaintiff filed a Complaint. Plaintiff alleges "Defendant is a signatory, and has been a signatory continuously during all relevant periods, to collective bargaining agreements (the "<u>Collective Bargaining Agreements</u>") with the IBEW Local Union 134 as the collective bargaining representatives of Defendant's employees." ECF No. 1 ¶ 7. Pursuant to these Collective Bargaining Agreements ("CBAs"), "Defendant has been and is currently obligated to submit contributions to the NEBF on behalf of the employees covered by the [CBAs]." *Id.* Further, pursuant to the CBAs, Defendant has been and is "bound to all terms and conditions of the Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund (the "<u>Employees Benefit Agreement</u>"), which has governed the administration of the NEBF at all times relevant to this action." *Id.* ¶ 8. As alleged by Plaintiff, despite Defendant's obligations, "Defendant has been delinquent in making contributions to the NEBF on behalf of its employees covered by the [CBAs]." *Id.* ¶ 9.

Plaintiff further alleges, when audits of Defendant's books and records for 2010 and 2011 were conducted, it was revealed that "Defendant failed to pay the NEBF all of the contributions owed NEBF for the period . . . January 2007 through December 2010." *Id.* ¶ 10. While Defendant has made some payments toward the total amount owed as discovered by the audits, as of the filing of the Complaint, "Defendant had failed and refused to pay $1,455.04 in

2

contributions, $732.73 in interest, $504.83 in liquidated damages, and $1,511.25 in audit fees, as it is obligated to do pursuant to the [CBAs], the Employees Benefit Agreement, and federal law." *Id.* ¶ 11. Plaintiff seeks judgment in its favor, in the amount of $4,203.85, and attorneys' fees incurred in connection with this matter.

Defendant was served a "Summons in a Civil Action" on April 11, 2013, *see* ECF No. 4, such that Defendant's Answer was due May 2, 2013. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Defendant has not filed an Answer or otherwise responded to the Complaint. On May 24, 2012 Plaintiff moved for Clerk's Entry of Default for want of answer or other defense against Defendant. *See* ECF No. 5. That same day Plaintiff also moved for a default judgment against Defendant. *See* ECF No. 6. On May 28, 2013 the Clerk of Court entered an Order of Default against Defendant. *See* ECF No. 7. On July 22, 2013 Judge Grimm referred the case to the undersigned for a Report and Recommendation on Plaintiff's Motion for Default Judgment. *See* ECF No. 8.

On December 12, 2013 the undersigned directed Plaintiff to file with the Court a copy of the CBAs and a copy of the Employees Benefit Agreement. *See* ECF No. 9. On December 18, 2013 Lawrence J. Bradley, Executive Secretary-Treasurer of the NEBF, filed an affidavit in response to the Order. *See* ECF No. 10. Attached to Mr. Bradley's affidavit are two letters of Assent ("LOA"), two CBAs and the Employees Benefit Agreement.

In September 2003 Defendant signed a LOA with the IBEW Local Union 134. This LOA bound Defendant to the then existing and any subsequent Communication labor agreement between the IBEW Local Union 134 and the Electrical Contractors Association of the City of Chicago chapter of the National Electrical Contractors Association ("NECA"). *See* ECF No. 10-

1. The Communication Agreement is dated January 1, 1999, as amended June 5, 2011. Article XVI, Benefits, Section 16.09 states,

> It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF, the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the Employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.
>
> The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

ECF No. 10-2 at 22-23.

In March 2010 Defendant signed another LOA with the IBEW Local Union 134. This LOA bound Defendant to the then existing and any subsequent Inside labor agreement between the IBEW Local Union 134 and the Electrical Contractors Association of the City of Chicago, NECA. *See* ECF No. 10-3. The Inside labor agreement, styled "Principal Agreement,"[2] is dated August 25, 1921 as amended June 5, 2011. Article 6, National Electrical Benefit Fund, Section 6.01 states,

---

[2] "I note that the document attached as Exhibit 4 is styled 'Principal agreement,' not 'Inside' agreement. It is well-established in the jurisdiction of Local Union 134, however, that the 'Principal' agreement is in fact the 'Inside' agreement (see 'inside' scope of work described at page 2). Further, I submit there is no good faith dispute that Defendant's employees performed the types [of] 'inside' electrical work described by the Principal agreement during the period that is the subject of his lawsuit, nor did Defendant ever (during the audit review or otherwise) deny the NEBF contributions were owed on employees performing work described in the agreement found at Exhibit 4 hereto." Ex. 10 (Bradley Aff. ¶ 6).

4

> It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF, the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the Employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.
>
> The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

ECF No. 10-4 at 26-27.

Part I, Collective Bargaining Agreement, Provision 3 of the Restated Employees Benefit Agreement and Trust ("Restated Employees Benefit Agreement) for the NEBF states,

> All collective bargaining agreements or other agreements covering construction employees entered into by the Brotherhood, or by any of its Local Unions, with Electrical Contractors . . . shall, consistent with applicable law, require such Electrical Contractors to make contributions to the NEBF and to recognize and bind themselves to this Agreement.

ECF No. 10-5 at 1-2. The Restated Employees Benefit Agreement empowers the Trustees to demand, collect and receive Covered Employer payments as well as all other money and property to which the Trustees may be entitled. *See* Section 6.8. Collection Costs are delineated in Section 6.9.

> **Collection Costs**. In the event a Covered Employer has failed or fails to make required contributions, the Trustees are authorized and empowered:

> **6.9.1** to impose on and receive from such Covered Employer all costs of any audit;
>
> **6.9.2** to assess and receive from such Covered Employer as liquidated damages an amount up to twenty percent (20%) of the amount found to be delinquent, in that the failure of the Covered Employer to make the required payment of contributions imposes additional burden and expense upon the Trustees in the collection thereof, in the administration of the NEBF, including but not limited to the communication with said Covered Employer, and, in addition thereto may cause a loss of benefits to Covered Employees, all of which are difficult of accurate ascertainment;
>
> **6.9.3** to assess and receive from such Covered Employer the lost interest from the delinquent amounts, to be calculated at a ten percent (10%) annual rate compounded monthly throughout the period of delinquency;
>
> \*             \*             \*
>
> **6.9.5** to impose on and receive from such Covered Employer all costs, audit expenses, actuarial expenses, and attorneys fees incurred by the Trustees in enforcing the provisions hereof, whether by litigation or otherwise[.]

ECF No. 10-5 at 25-26.

## II. DISCUSSION

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments. Pursuant to Rule 55(b), the clerk may enter a default judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear and is "neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1).

The entry of default judgment is a matter within the discretion of the Court. *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). As the Court noted in *Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402 (D. Md. 2006), "[t]he United States Court of Appeals for the Fourth Circuit has a 'strong

policy that cases be decided on the merits.'" *Id.* at 405 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)). Nonetheless, "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421).

In determining whether to award a default judgment, the Court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). It remains, however, "for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010); 10A Charles Alan Wright et al., *Fed. Prac. and Proc. Civ.* § 2688 (3d ed. 1998) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."); *id.* (explaining that the court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law").

If the Court finds that "liability is established, [it] must then determine the appropriate amount of damages." *Samler*, 725 F. Supp. 2d at 494 (citing *Ryan*, 253 F.3d at 780-81). This is so because "an allegation 'relating to the amount of damages' is not deemed admitted based on a defendant's failure to deny in a required responsive pleading." *Hartford Fin. Servs. Grp. Inc. v.*

*Carl J. Meil, Jr., Inc.*, No. WDQ-10-2720, 2011 WL 1743177, at *7 (D. Md. May 5, 2011) (quoting Fed. R. Civ. P. 8(b)(6)); *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, LLC*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Int'l Painters & Allied Trades Indus. Pension Fund v. Metro Glass & Mirror, Inc.*, No. ELH-11-2389, 2012 WL 893262, at *2 (D. Md. Mar. 14, 2012) ("The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.")

In sum, the Court must make two determinations. First, the Court must decide "whether the unchallenged facts in plaintiff['s] complaint constitute a legitimate cause of action[.]" *Samler*, 725 F. Supp. 2d at 494. Second, if the Court finds that liability is established, it must "make an independent determination regarding the appropriate amount of damages." *Id.*

**A.    Liability**

Eight months have passed since Defendant was served with the Complaint, yet Defendant has not pleaded or otherwise asserted a defense by filing a motion. As a result, all of the factual allegations made in Plaintiff's Complaint not pertaining to damages are deemed admitted. Fed. R. Civ. P. 8(b)(6); *Ryan*, 253 F.3d at 780. Plaintiff moved for a default judgment on May 24, 2013, and Defendant still has not responded. It is within the Court's discretion to grant default judgment when a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 897 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enterprises*, 446 F. Supp. 2d at 405-06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

Accordingly, the Court should grant default judgment on this Complaint if Plaintiff has established Defendant's liability.

Under 29 U.S.C. § 1145 (Delinquent contributions), Defendant CESI is obligated to make contributions to the NEBF in accordance with the terms and conditions of the CBAs. When an employer such as the CESI fails to make the obligated contributions, a fiduciary of a multiemployer plan, in this case Salvatore J. Chilia and D.R. Borden, Jr. on behalf of NEBF, may enforce the provisions of ERISA and the terms of the CBAs through a civil action. *See* 29 U.S.C. § 1132(a)(3).[3] If a court enters judgment in favor of the multiemployer plan in an action brought by the plan's fiduciary seeking to recover delinquent contributions from a defendant employer pursuant to 29 U.S.C. § 1145, the court shall award the plan—

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Additionally, pursuant to the (Restated) Employees Benefit Agreement, the Trustees are authorized to take all necessary actions to recover delinquent contributions.

---

[3] "A civil action may be brought—by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"

Further, the (Restated) Employees Benefit Agreement "authorizes the Trustees to recover interest on the delinquent contributions at a rate of ten percent (10%) per annum, liquidated damages in an amount equal to twenty percent (20%) of the delinquency, and all costs, including attorneys' fees and audit expenses, incurred in collecting the delinquency." ECF No. 1 ¶ 16; *see* ECF No. 10-5 at 25-26 (Restated Employees Benefit Agreement §§ 6.9.1 - 6.9.3, 6.9.5).

That, accepting as true Plaintiff's well-pleaded allegations (with supporting documentation provided via the motion for default judgment and affidavit of Lawrence J. Bradley), the undersigned finds Plaintiff has proven,

> (a) Defendant is a signatory to the CBAs with the IBEW Local Union 134;
>
> (b) the NEBF is the multiemployer employee pension benefit plan established pursuant to an agreement between the IBEW and the NECA;
>
> (c) the NEBF is a multiemployer plan within the meaning of 29 U.S.C. § 1002(2);
>
> (d) in accordance with the CBAs, Defendant is obligated to submit contributions to the NEBF on behalf of employees covered by the CBAs;
>
> (e) pursuant to the CBAs, Defendant is bound to all terms and conditions of the (Restated) Employees Benefit Agreement which governs the administration of the NEBF;
>
> (f) an audit of Defendant's books and records in 2010 and 2011 revealed Defendant failed to pay the NEBF all contributions owed during the period of January 2007 through December 2010;
>
> (g) Defendant has made some payments toward the delinquent contributions but unpaid contributions in the amount of $1,455.04 remain outstanding;
>
> (h) "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with

> the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; and
>
> (i) Defendant has violated 29 U.S.C. § 1145 since it has failed to make contributions to the NEBF in accordance with the CBAs and the (Restated) Employees Benefit Agreement.

Accordingly, Plaintiff has established Defendant's liability under ERISA and the (Restated) Employees Benefit Agreement, and therefore a default judgment as to the "Statement of Claim" outlined in Plaintiff's Complaint is proper.

### B. Damages

In this ERISA case Plaintiff is entitled to damages as outlined in 29 U.S.C. § 1132(g)(2). Plaintiff has submitted an affidavit of Stephen H. Schultz, Director of Audit and Delinquencies for the NEBF, in support of Plaintiff's request for unpaid contributions, interest, liquidated damages and audit costs. *See* ECF No. 6-2. Plaintiff has also submitted an affidavit of Jennifer Bush Hawkins, Esquire, in support of Plaintiff's request for reasonable attorneys' fees and costs. *See* ECF No. 6-1.

Mr. Schultz attests two audits of Defendant's payroll records were conducted in 2010 and 2011. From these audits Plaintiff discovered delinquent contributions totaling $1,455.04 owed by Defendant for the period of January 2007 through December 2010. ECF No. 6-2 ¶ 5. Provided Plaintiff supplements the record with competent evidence in support of this figure, *see Int'l Painters & Allied Trades Industry Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 687 (D. Md. 2013), the undersigned recommends the Court award Plaintiff $1,455.04 in unpaid contributions.

According to Mr. Schultz Defendant owes Plaintiff $504.83 as liquidated damages on the delinquency. ECF No. 6-2 ¶ 7. Mr. Schultz has not explained how this figure was calculated.

11

Provided Plaintiff supplements the record with competent evidence, the undersigned recommends the Court award Plaintiff $504.83 as liquidated damages.

Interest in the amount of $1,027.26 is sought based on a rate of 10% per annum calculated monthly on the outstanding contributions. ECF No. 6-2 ¶ 6. Provided Plaintiff supplements the record with competent evidence, the undersigned recommends the Court award Plaintiff $1,027.26 in interest.

In addition to pre-judgment interest, Plaintiff seeks post-judgment interest in accordance with 28 U.S.C. § 1961(a).[4] The undersigned recommends the Court direct post-judgment interest, as calculated pursuant to 28 U.S.C. § 1961, continue to accrue until such time as the judgment is satisfied.

Mr. Schultz attests the cost of the two audits was $1,511.25. ECF No. 6-2 ¶ 9. Provided Plaintiff supplements the record with competent evidence, the undersigned recommends the Court award Plaintiff $1,511.25 in audit costs.

Finally, Plaintiff incurred legal fees and costs totaling $968.90. ECF No. 6-2 ¶ 8. This claimed expense is supported by the affidavit of Jennifer Bush Hawkins, Esquire. Considering Ms. Hawkins' affidavit, the twelve (12) factors used in determining a reasonable fee under *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and this Court's local guidelines regarding hourly rates, the undersigned finds the requested fees and costs, which total $968.90, are reasonable. Ms. Hawkins has been practicing law for more than 15 years. Her hourly rate of $348 is within the range of this Court's local guidelines. Although the hourly rate of the paralegal Owen Davis is $127, $12 more than the maximum for paralegals

---

[4] "Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . Such interest shall be calculated from the date of the entry of the judgment, at rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."

and law clerks under this Court's local guidelines, the rate billed is not excessive. Moreover the paralegal dedicated almost twice as much time on this case as the attorney at a much lower hourly rate. The undersigned recommends the Court award Plaintiff $968.90 in attorneys' fees and costs.

## RECOMMENDATIONS

The undersigned summarizes the recommendations as follows:

(a) The Court grant Plaintiff's Motion for Default Judgment (ECF No. 6);

(b) The Court award Plaintiff $1,455.04 for delinquent contributions subject to Plaintiff supplementing the record with competent evidence;

(c) The Court award Plaintiff $504.83 as liquidated damages subject to Plaintiff supplementing the record with competent evidence;

(d) The Court award Plaintiff $1,511.25 for the costs of two audits subject to Plaintiff supplementing the record with competent evidence;

(e) The Court award Plaintiff $1,027.26 in interest subject to Plaintiff supplementing the record with competent evidence;

(f) The Court award Plaintiff $968.90 in attorneys' fees and costs; and

(g) The Court direct post-judgment interest, calculated in accordance with 28 U.S.C. § 1961, continue to accrue on the judgment until satisfied by Defendant.

December 26, 2013 _____/s/_____
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE